UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ANDREI GALKIN,<br><br>      Petitioner,<br>v.<br><br>BRUCE SCOTT, et al.,<br><br>      Respondents. | Case No. 2:26-cv-00530-TLF<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner Andrei Galkin is a citizen and native of Russia. Dkt. 1 at 1; Dkt. 5 at 3. Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 at 1; Dkt. 5 at 5. The parties agree petitioner has been detained since May 21, 2024, or approximately 21 months as of the date of this order. Dkt. 1 at 14; Dkt. 5 at 4.

On February 12, 2026, petitioner filed this petition for a writ of habeas corpus through counsel. Dkt. 1. He argues he has "been subject to prolonged detention . . . in violation of the Due Process Clause of the Fifth Amendment . . ." Dkt. 1 at 3.

Petitioner requests the Court (1) order his immediate release; or alternatively (2) order an individualized bond hearing before either this Court or an immigration judge ("IJ") within 14 days; (3) declare that his ongoing detention violates due process; and (4) award attorney fees and costs under the Equal Access to Justice Act. Dkt. 1 at 24-25.

ORDER GRANTING HABEAS PETITION - 1

The parties have unanimously consented to the jurisdiction of a Magistrate Judge. Dkt. 3.

The Court, having considered the parties' submissions, the record, and applicable law, GRANTS the petition for a writ of habeas corpus as provided below.

## I.   BACKGROUND

Petitioner is a citizen and native of Russia who was detained on May 21, 2024. Dkt. 1 at 1; Dkt. 5 at 3-4. On that date, petitioner entered the United States from Mexico with his wife after obtaining an appointment through the CBP One application. Dkt. 1 at 5; Dkt. 1-3 at 3; Dkt. 6 at 2. Respondents state petitioner did not have any valid entry documents; this led them to process petitioner as being subject to expedited removal. Dkt. 6 at 2.

After being detained, petitioner expressed a fear of returning to Russia due to his public opposition to the war with Ukraine. Dkt. 1-3 at 4, 57; Dkt. 6 at 2. On May 30, 2024, the United States Customs and Immigration Services ("USCIS") conducted a credible fear interview with petitioner. Dkt. 1 at 5-6; Dkt. 6 at 2. On June 4, 2024, USCIS found petitioner had a credible fear of returning to Russia. Dkt. 1 at 5-6; Dkt. 1-3 at 9 (USCIS determination); Dkt. 6 at 2.

The Department of Homeland Security ("DHS") then issued a Notice to Appear ("NTA") charging petitioner with being removable under INA 212(a)(7)(A)(i)(I) (codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I)) and placing him in removal proceedings. Dkt. 1 at 6; Dkt. 1-3 at 6 (notice to appear); Dkt. 6 at 3-4.

Since being detained, petitioner has pursued an asylum claim. In October 2024, an IJ granted petitioner's asylum claim. Dkt. 1 at 6; Dkt. 1-3 at 17 (IJ order); Dkt. 5 at 3.

The government appealed to the Board of Immigration Appeals ("BIA") which reversed and remanded the IJ's grant order in April 2025. Dkt. 1 at 6; Dkt. 5 at 3. On remand, petitioner's case was consolidated with his wife's, but an IJ ultimately denied the asylum claim in July 2025. Dkt. 1 at 6; Dkt. 1-3 at 30, 45 (IJ order); Dkt. 5 at 3. Petitioner appealed this denial to the BIA. Dkt. 1 at 6; Dkt. 1-3 at 46 (notice of appeal); Dkt. 5 at 3. According to the record, petitioner's BIA appeal remains pending. Dkt. 1 at 6; Dkt. 5 at 3. Petitioner states he will appeal to the Ninth Circuit if the BIA dismisses his appeal. Dkt. 1 at 6; Dkt. 1-3 at 55.

Petitioner also states he has repeatedly but unsuccessfully requested parole or similar forms of release. Dkt. 1 at 6; Dkt. 1-3 at 53-55. Petitioner's claimed attempts at requesting parole include, but are not limited to, the following. In July 2024, he asked ICE for discretionary parole which was denied on the basis petitioner was a community danger. Dkt. 1 at 6-7. After an IJ initially granted petitioner's asylum claim in October 2024, petitioner again asked ICE for parole. Dkt. 1 at 7; Dkt. 1-3 at 54. Petitioner's request went unaddressed over the following months, leading petitioner to engage in a hunger strike. Dkt. 1 at 6-7; Dkt. 1-3 at 54-55. After petitioner was transferred to NWIPC in February 2025, he filed a bond motion which an IJ denied for a lack of jurisdiction in April 2025. Dkt. 1 at 6-7; Dkt. 1-3 at 55, 64.

## II.    DISCUSSION

### A. Statutory Basis for Petitioner's Detention

"Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available

ORDER GRANTING HABEAS PETITION - 3

to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

The parties agree petitioner was initially detained under 8 U.S.C. § 1225(b)(1)(B). Dkt. 1 at 8-9; Dkt. 5 at 3. Noncitizens "covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). But, if a noncitizen "'indicates either an intention to apply for asylum . . . or a fear of persecution,' then that [noncitizen] is referred for an asylum interview." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(ii)). "If an immigration officer determines after that interview that the [noncitizen] has a credible fear of persecution, 'the [noncitizen] shall be detained for further consideration of the application for asylum.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

Under § 1225(b), "the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole 'for urgent humanitarian reasons or significant public benefit.'" *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1112 (W.D. Wash. 2019) (quoting 8 U.S.C. § 1182(d)(5)(A)).

Further, the "statute does not impose 'any limit on the length of detention' pending a decision on the asylum application and does not authorize bond hearings or release on bond." *Id*. (quoting *Jennings*, 583 U.S. at 297). Stated otherwise, "detention must continue until immigration officers have finished 'consider[ing]' the application for asylum . . . or until removal proceedings have concluded." *Jennings*, 583 U.S. at 299 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

ORDER GRANTING HABEAS PETITION - 4

## B. Due Process: The *Banda* Test

A "statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Due Process Clause of the Fifth Amendment prohibits the government from "'depriv[ing]' any 'person … of … liberty … without due process of law.'" *Id.* "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* "[U]nreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *Banda*, 385 F. Supp. 3d at 1117; *see also Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so.").

The parties acknowledge (*see generally* Dkts. 1, 5) this Court adopted a "multi-factor test . . . to determine whether § 1225(b) detention has become unreasonable." *Banda*, 385 F. Supp. 3d at 1118. Under the *Banda* test, this Court weighs six factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)). The Court addresses each factor in turn below.

### i. Length of Detention

"First, the Court considers the length of detention, which is the most important factor." *Id.*

1 | Here, petitioner has been detained for approximately 21 months. Dkt. 5 at 4; *see also Chekhovskii v. Scott*, No. 2:25-cv-02550-TLF, 2026 WL 353265 at *4 (finding this factor favored a petitioner who had been detained for approximately 20 months).

The Court finds this factor favors petitioner.

### ii.  Likely Duration of Future Detention

"Second, the Court considers how long the detention is likely to continue absent judicial intervention, including the "'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119 (quoting *Jamal*, 358 F. Supp. 3d at 859).

Petitioner's BIA appeal is currently pending. Dkt. 1 at 6; Dkt. 5 at 3. Further, petitioner states he will appeal to the Ninth Circuit if the BIA dismisses his appeal. Dkt. 1 at 6.

Respondents argue relying on either of the above proceedings is inappropriate. For the BIA appeal, they argue that "[p]reviously, the BIA completed the immigration appeal in approximately five months" meaning "[i]f this BIA appeal duration is similar to the last appeal, then a BIA decision should be forthcoming shortly." Dkt. 5 at 4. For reliance on the Ninth Circuit, they argue "this would require the Court to speculate the outcome of Petitioner's pending BIA appeal." Dkt. 5 at 4-5.

Respondents' arguments are undermined by *Banda*. There, petitioner had appealed to the BIA in March 2019 before this Court's decision in June 2019. *Banda*, 385 F. Supp. 3d at 1111, 1119. This Court held the second factor favored petitioner as he "only recently filed his appeal of the IJ's removal order with the BIA" and "[i]f the BIA affirms, petitioner will have the opportunity to seek review in the Ninth Circuit" which

1  "may take up to two years or longer." *Id.* at 1119; *see also Chekhovskii*, 2026 WL
2  353265 at *4 (noting cases discussing similar timelines for Ninth Circuit appeals). In
3  other words, the Court in *Banda* both considered a BIA appeal (that appears to have
4  been pending about the same amount of time as petitioner's current appeal) and the
5  possibility of a Ninth Circuit appeal. *Banda*, 385 F. Supp. 3d at 1111, 1119.
6  Respondents' filings also acknowledge they moved to expedite their first appeal before
7  the BIA, undermining its utility as a measure for petitioner's current appeal. Dkt. 6 at 3.
8     The Court thus finds this factor favors petitioner.
9     iii.   **Conditions of Detention**
10     "Third, the Court considers the conditions of the detention facility where the
11  petitioner is detained." *Banda*, 385 F. Supp. 3d at 1119. "'The more that the conditions
12  under which the [noncitizen] is being held resemble penal confinement, the stronger his
13  argument that he is entitled to a bond hearing.'" *Id.* (quoting *Jamal*, 358 F. Supp. 3d at
14  860).
15     Petitioner is currently detained at NWIPC. Dkt. 1 at 1; Dkt. 5 at 5. He argues the
16  conditions at NWIPC are "substantially similar if not worse than conditions in criminal
17  detention facilities across the United States." Dkt. 1 at 16. Specifically, petitioner "has
18  described poor drinking water at NWI[PC], inconsistent and delayed mealtimes . . ., that
19  meals are nutritionally insufficient, and due to low staffing, when violence breaks out,
20  the officers cannot necessarily intervene immediately," among other issues. Dkt. 1 at
21  17-18 (citing Dkt. 1-3 at 55-57).
22     Petitioner also alleges he has "developed health problems" which have gone
23  untreated, including issues with his "braces that require regular maintenance" which
24
25

ORDER GRANTING HABEAS PETITION - 7

now "cut into my cheek," force him to "chew only on the left side," and have caused his "teeth [to] return[] to their former incorrect position." Dkt. 1-3 at 56. Petitioner also reports "psychological problems in detention, including insomnia, apathy, a nervous tic, and depressive symptoms." Dkt. 1-3 at 56. Further, while he is "allowed one visit per week for one hour" with his wife, "these visits are regularly canceled for unclear reasons." Dkt. 1-3 at 57.

Respondents do not dispute petitioner's claims, Dkt. 5 at 5, and this Court has previously found similar allegations sufficient in *Chekhovskii*, 2026 WL 353265 at *5; *see also Maliwat v. Scott*, No. 2:25-cv-00788-TMC, 2025 WL 2256711 at *6 (W.D. Wash. Aug. 7, 2025) (quoting *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033 at *11 (W.D. Wash. Mar. 29, 2024) (noting courts have "found, detention conditions at NWIPC are 'similar...to those in many prisons and jails.'").

The Court finds this factor weighs heavily in favor of petitioner.

iv. **Delays in Removal Proceedings**

Next are "the fourth and fifth factors—both which consider delays caused by the parties." *Maliwat*, 2025 WL 2256711 at *6 (citing *Banda*, 385 F. Supp. 3d at 1119).

Turning first to the petitioner, respondents state "[p]etitioner does not appear to have delayed removal in this case" as he pursues his asylum claim. Dkt. 5 at 5.

Turning next to the government, "[i]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10-11 (S.D.N.Y. May 23, 2018). A delay can be

attributable to the government even if "not the result of intentional action on behalf of government officials." *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089 at *10.

Here, there appears to be no evidence the government intentionally caused any delay. Even so, any "delay in this case is a product of the BIA's and Ninth Circuit's 'crowded dockets,' which courts typically attribute to the Government—not the Petitioner." *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 923 (W.D. Wash. 2020).

The Court finds the fourth factor is neutral, while the fifth factor weighs slightly in petitioner's favor.

### v. Likelihood of Removal

"Finally, the Court considers 'the likelihood that the final proceedings will culminate in a final order of removal.'" *Banda*, 385 F. Supp. 3d at 1120 (quoting *Jamal*, 358 F. Supp. 3d at 860). "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous*, 2018 WL 2357266 at *11).

Petitioner argues he "has filed a good-faith appeal of the denial of his asylum application with the BIA" and is "arguing that the [IJ] erred in failing to find past or future persecution and should the Court of Appeals agree with their arguments, the case will likely be granted, or remanded . . ." Dkt. 1 at 20-21. Respondents argue petitioner's ultimate removal is "likely" as "after a prior BIA appeal and multiple individual hearings on the application for relief, an immigration judge has denied the application and ordered Petitioner removed." Dkt. 5 at 5.

Similar to *Banda*, 385 F. Supp. 3d at 1120, and *Chekhovskii*, 2026 WL 353265 at *6, the Court lacks sufficient information and declines to comment on the potential merits of petitioner's pending appeal. Thus, the Court finds this factor is neutral.

### vi. Weighing the Factors

Like in *Banda*, "four of the six factors weigh in favor of granting petitioner a bond hearing, and two factors are neutral." 385 F. Supp. 3d at 1120; *see also Chekhovskii*, 2026 WL 353265 at *6. Thus, the Court finds petitioner's detention under § 1225(b) has become unreasonably prolonged and due process requires the government provide him with a bond hearing.

### C. Remedy: Bond Hearing

When the Court determines that a petitioner's detention under § 1225(b) has become unreasonably prolonged in violation of due process, the proper remedy is a bond hearing. *See Banda*, 385 F. Supp. 3d at 1120; *see also Bojorge-Sequeria v. GEO Grp. Inc.*, No. 2:25-cv-01807-KKE-GJL, 2026 WL 288378 at *6 (W.D. Wash. Jan. 15, 2026), *report and recommendation adopted*, 2026 WL 285657 (W.D. Wash. Feb. 3, 2026).

Under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) the government must bear the burden of proving the detainee is a danger or flight risk by clear and convincing evidence. *See Banda*, 385 F. Supp. 3d at 1120; *see also Chekhovskii*, 2026 WL 353265 at *6.

The Court finds petitioner is entitled to a bond hearing with the procedural requirements of *Singh*: and the Government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community.

ORDER GRANTING HABEAS PETITION - 10

### III. CONCLUSION

For the reasons above, the Court **GRANTS** the habeas petition. The Court finds petitioner's prolonged detention without an individualized bond hearing violates the Due Process Clause of the Fifth Amendment.

Accordingly, the Court **ORDERS**:

1. Respondents must provide petitioner with a bond hearing **within 7 calendar days** of this Order. This bond hearing shall comply with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011) – there must be a contemporaneous record of the hearing, and the government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community;

2. Alternatively, respondents shall immediately release petitioner under appropriate conditions of release;

3. The parties shall file a joint status report with the Court **on or before March 17, 2026**, regarding the bond hearing and whether petitioner was released; and

4. The Court will consider a motion for attorney fees and costs. Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and shall be noted under Local Rule 7(d)(3).

Dated this 6th day of March, 2026.

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING HABEAS PETITION - 11